**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

UNITED STATES OF AMERICA,

                    Plaintiff,

          v.

GARRET LEE MONROE,

                    Defendant.

Case No. 25-CR-468-JFH

## OPINION AND ORDER

Before the Court are a Motion in Limine ("Motion") filed by Defendant Garret Lee Monroe ("Defendant") [Dkt. No. 38] and a response in opposition filed by the United States of America ("Government") [Dkt. No. 42], along with the Government's Notice of Testimony Pursuant to Rule 16(a)(1)(G) [Dkt. No. 33] and Defendant's Objection thereto [Dkt. No. 35]. For the following reasons, the Motion is GRANTED IN PART and DENIED IN PART and the Objection is OVERRULED as set forth below.

## BACKGROUND

Defendant is indicted on three counts: (1) Aggravated Sexual Abuse by Force in Indian Country, in violation of 18 U.S.C. §§ 1151, 1152, and 2241(a)(1); (2) Aggravated Sexual Abuse by Threat and Fear in Indian Country, in violation of 18 U.S.C. §§ 1151, 1152, and 2241(a)(2); and (3) Assault with Intent to Commit Aggravated Sexual Abuse in Indian Country, in violation of 18 U.S.C. §§ 1151, 1152, and 113(a)(1). Dkt. No. 18. It is alleged that, "from on or about November 30, 2025, [Defendant], [an] enrolled member of the Northern Arapaho Tribe, sexually abused [A.P.] by threatening her with serious bodily injury [and] holding a knife to her throat." Dkt. No. 1 at 2-3. Trial is set to begin on April 20, 2026. Dkt. No. 25.

**STANDARD**

"The purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to the issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008), *aff'd*, 402 F. App'x 337 (10th Cir. 2010) (internal quotation marks and citation omitted).  Evidentiary rulings should typically be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context.  *Id.*  "A court will generally not grant a motion in limine unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible on *all* potential grounds." *Tulsa Zoo Mgmt., Inc. v. Peckham Guyton Albers & Viets, Inc.*, No. 17-CV-644-GKF, 2019 WL 1562147, at *1 (N.D. Okla. Mar. 5, 2019) (internal quotation marks and citation omitted).

**DISCUSSION**

**I.      Use of the Word "Victim" or the Initials "MV"**

Defendant first seeks to preclude the Government from using the word "victim" or the initials "MV" (minor victim) during trial, particularly when referring to A.P.  Dkt. No. 38 at 1-2. While the Government contends that referring to A.P. as the "alleged minor victim" during its presentation of evidence would not deprive Defendant of the presumption of innocence [Dkt. No. 42 at 4-5], the Court is unpersuaded.

In prior cases, this Court has excluded use of the term "victim" during the presentation of evidence to avoid undue prejudice to defendants. *E.g.*, *United States v. McGirt*, No. 20-CR-050-JFH, 2023 WL 7921093, at *5 (E.D. Okla. Nov. 15, 2023) ("Neither party cites to, and the Court has not found binding authority on this issue.  However, the Court is aware of non-binding decisions in which courts have recognized that the repeated use of the term 'victim' may be prejudicial. . . .  Other courts have acknowledged that use of the term 'victim' holds limited

2

probative value.") (collecting cases).  For the same reasons, the Court finds that the Government should not use the term "victim" or the initials "MV" when presenting its evidence in this case. The term "victim" is merely a descriptive label and is unnecessary for any witness to use when reciting what occurred at the time of the charged conduct.

Defendant's Motion is therefore GRANTED as to this issue.  The Court directs the Government and its witnesses—including A.P.—to refrain from using the term "victim" or the initials "MV" during the presentation of evidence.  However, because the Government is likely to argue that it has met its burden to establish Defendant's guilt after resting its case, it would not be unfairly prejudicial to allow it to follow this argument to its logical conclusion by referring to A.P. as the "victim" in its closing argument.  Accordingly, the Court's ruling does not prohibit the Government from referring to A.P. as the "victim" in closing argument.

## II.    Admission of A.P.'s Age

Defendant maintains that reference to A.P.'s age is unnecessary to prove any element of the charged offenses and would be unduly prejudicial to permit at trial.  Dkt. No. 38 at 3; Dkt. No. 35 at 6 ("In the case at bar, while A.P. may have been 16 years old at the time of the alleged offense, the minor status of A.P. is not relevant to the charged offenses.  The allegations are that on November 30, 2025, the alleged offenses occurred, and the anticipated evidence will be that on that same day, A.P. reported the allegations.").  Defendant asks the Court to prohibit the Government from referring to A.P. as a minor and to exclude any evidence of her age at the time of the alleged offenses.  Dkt. No. 38 at 3.

A universal prerequisite to the admission of evidence at trial is that it must be relevant to the trier of fact.  Fed. R. Evid. 402.  "Evidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence

in determining the action." Fed. R. Evid. 401. "The fact to be proved may be ultimate, intermediate, or evidentiary; it matters not, so long as it is of consequence in the determination of the action." Advisory Committee's Note to Fed. R. Evid. 401. Equally, "[t]he fact to which the evidence is directed need not be in dispute," as "[e]vidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding." *Id.*; *United States v. Condrin*, 473 F.3d 1283, 1286 n.2 (10th Cir. 2007).

The Government argues that admission of A.P.'s age is relevant in at least two respects. Dkt. No. 42 at 5. First, it writes, "[t]he fact that [Defendant] repeatedly asked [A.P.]'s age is probative relevant evidence because his fixation on her age suggested he was assessing his criminal exposure if he were to engage in sexual intercourse with her." *Id.* Second, "[A.P.]'s age, and the age and power differential between her and [Defendant,] is probative evidence for the jury to consider [A.P.]'s actions in reporting the crime and to assess her credibility." *Id.* Moreover, the Government contends that "[A.P.]'s age and vulnerability provide[] context to explain why she waited for her cousin to come back from work before reporting the rape, rather than immediately calling 911." *Id.* The Court agrees. Though it is true that A.P.'s age is not a discrete element of any charges against Defendant, there is little denying that her age—if admitted in the manner proposed by the Government—would be relevant to understanding the context of the alleged crimes and weigh upon the veracity of A.P.'s testimony. The question, then, is whether the evidence should be excluded despite its relevance.

Pursuant to Federal Rule of Evidence 403, the Court has discretion to exclude evidence that is relevant if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. "A trial judge's discretion under Rule 403 in balancing

the probative value of evidence against its potential prejudicial effect is broad . . . ." *United States v. Martinez*, 938 F.2d 1078, 1082 (10th Cir. 1991).  "Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocence of the crime charged." *United States v. Henthorn*, 864 F.3d 1241, 1256 (10th Cir. 2017) (quoting *United States v. MacKay*, 715 F.3d 807, 840 (10th Cir. 2013)).  "Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case." *Martinez*, 938 F.2d at 1082.  Rather, "[t]o be *unfairly* prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (quoting Advisory Committee's Note to Fed. R. Evid. 403).

Ultimately, "the credibility of witnesses and the weight to be given to their testimony are for the jury" to decide, not the Court.  *Gunning v. Cooley*, 281 U.S. 90, 97 (1930).  Hence, "despite the discretion afforded the district court" under Rule 403, exclusion of otherwise relevant evidence from a jury's consideration is "an extraordinary remedy [to] be used sparingly." *United States v. Rodriguez*, 192 F.3d 946, 949 (10th Cir. 1999) (internal quotation marks omitted).  To avert undue interference with the jury's fact-finding mission, "district courts must give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value" when weighing probative value against unfair prejudice.  *United States v. Murry*, 31 F.4th 1274, 1291 (10th Cir. 2022) (internal quotation marks omitted).

Here, the Court concedes that admission of A.P.'s status as a minor does present some risk of unfair prejudice to Defendant considering the emotional response it may provoke.  Such risk is ever-present in cases where the defendant is accused of sexual assault and the alleged victim is a

minor.  However, weighing the evidence according to its minimum prejudicial value, the Court is not convinced that the risk of unfair prejudice substantially outweighs the probative force.  The Government's assertion that A.P.'s age will be significant evidence for a jury to consider in assessing her credibility is entirely reasonable, and the risk that a jury will be unable to reach a fair verdict if exposed to it is too slight to support exclusion.  Defendant's Motion is therefore DENIED as to this issue.

### III.    Body Camera Statements

In his Motion, Defendant indicates that body cameras worn by police officers recorded various interactions with witnesses at the scene of the alleged offenses.  Dkt. No. 38 at 3.  Without referring to any declarant or recorded statement in particular, Defendant argues that these interactions constitute inadmissible hearsay and must be excluded under Federal Rule of Evidence 801.  *Id.* Given the lack of specificity, the Government asserts that it "cannot meaningfully respond" to Defendant's argument and that the Court "cannot meaningfully analyze the admissibility of [these] unknown statements."  Dkt. No. 42 at 6.  The Court concurs with the Government's assessment, and Defendant's Motion is therefore DENIED without prejudice as to this issue.  The parties are directed to confer regarding the body camera footage and identify any objection to any specific statements.  If necessary, Defendant may file an additional motion in limine by April 10, 2026, after conferring with the Government.

### IV.    Expert Witnesses

The Government has identified three expert witnesses it may call at trial, two of whom are expected to testify as both expert and fact witness.  Dkt. No. 33.  One of the hybrid witnesses is Leah Oliver, a forensic nurse and averred expert in sexual assault nurse examination ("SANE") who examined A.P. in the emergency room at Hillcrest Hospital hours after the alleged offenses.

6

Dkt. No. 33-1 at 2-4; Dkt. No. 40 at 3-4.  The second is Ashley Gonzales, an averred expert in child sexual abuse disclosure topics and forensic interviews who conducted a child adolescent forensic interview ("CAFI") with A.P. roughly ten days later.  Dkt. No. 33-1 at 5-8; Dkt. No. 40 at 4, 9-11.  Defendant raises objections pertaining to each of these witnesses in both the Motion [Dkt. No. 38 at 4-6] and a separately filed Objection to Government's Notice of Testimony Pursuant to Rule 16(a)(1)(G) ("Objection") [Dkt. No. 35].  The objections from both filings are resolved collectively in this Order.

### A.    Ms. Oliver and A.P.'s Statements During the SANE

Defendant objects to the introduction of statements by A.P. in Ms. Oliver's SANE report as hearsay not within the exception provided under Federal Rule of Evidence 803(4) for statements made for medical diagnosis or treatment.  Dkt. No. 35 at 1-5.  He also argues "[a]dmission of these statements in addition to A.P.'s testimony would be cumulative."  Dkt. No. 38 at 4.

Statements made for medical diagnosis or treatment are not subject to exclusion under the rule against hearsay, regardless of whether the declarant is available as a witness.  Fed. R. Evid. 803(4). This exception is premised on the idea that "a patient's statements to her physician are likely to be particularly reliable because the patient has a self-interested motive to be truthful:  She knows that the efficacy of her medical treatment depends upon the accuracy of the information she provides to the doctor."  *United States v. Tome*, 61 F.3d 1446, 1449 (10th Cir. 1995) (citing *United States v. Joe*, 8 F.3d 1488, 1493 (10th Cir. 1993)).  "[A] statement made in the course of procuring medical services, where the declarant knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility" and is therefore not subject to the same reliability concerns as hearsay generally.  *Id*. at 1449-50 (internal quotation marks omitted); *see also White v. Illinois*, 502 U.S. 346, 355-56 (1992) (adding, "those same factors that contribute to

the statements' reliability cannot be recaptured even by later in-court testimony," and holding that "[t]o exclude such probative statements under the strictures of the Confrontation Clause would be the height of wrongheadedness").

A statement qualifies as "made for medical diagnosis or treatment" if it "(A) is made for – and is reasonably pertinent to – medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." Fed. R. Evid. 803(4). While this generally includes "statements as to causation, reasonably pertinent to the same purposes, . . . [s]tatements as to fault would not ordinarily qualify." Advisory Committee's Note to Fed. R. Evid. 803. "Thus a patient's statement that he was struck by an automobile would qualify but not his statement that the car was driven through a red light." *Id.* Still, the line is not always drawn so easily. This is particularly true with statements identifying the perpetrator of an injury or recounting similar background information that is only tangentially related to the patient's medical diagnosis or treatment. *See generally* 30B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6846 (2025 ed.) (noting the topic remains "[a]n active area of controversy"). Nevertheless, Tenth Circuit precedent on the particular issue at hand is well-settled:

> [S]tatements made by a child to a physician which identify the sexual abuser as a member of the family or household are "reasonably pertinent to diagnosis or treatment" and may therefore be admissible. Statements revealing the identity of the child abuser are "reasonably pertinent" to treatment because the physician must be attentive to treating the child's emotional and psychological injuries, the exact nature and extent of which often depend on the identity of the abuser. . . .
>
> . . . . However, the identity of the abuser is reasonably pertinent to treatment in virtually every domestic sexual assault case, even those not involving children. All victims of domestic sexual abuse suffer emotional and psychological injuries, the exact nature and extent of which depend on the identity of the abuser. . . . In short, the domestic sexual abuser's identity is admissible under Rule 803(4) where the abuser has such an intimate relationship with the victim that the abuser's identity becomes "reasonably pertinent" to the victim's proper treatment.

8

*Joe*, 8 F.3d at 1494-95 (citations and footnotes omitted), *cert. denied*, 510 U.S. 1184 (1994). The Tenth Circuit revisited its holding in *United States v. Griffith*, 65 F.4th 1216 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 1066, 218 L. Ed. 2d 246 (2024). There, it considered whether statements made by a fifteen-year-old victim of sexual abuse to a SANE nurse identifying the girl's stepfather as the perpetrator were admissible under Rule 803(4). *Id.* at 1223. Citing both *Joe* and a later panel decision in *United States v. Edward J.*, 224 F.3d 1216, 1220 (10th Cir. 2000), the Court summarily affirmed. *Id.* In doing so, it rejected the stepfather's claim that the district court had erred in admitting testimony from the SANE nurse regarding the victim's statements because the victim had not intended the statement to aid in her treatment. *Id.* (noting that"[o]ne panel can't overrule another panel's precedential opinion, . . . [s]o we must uphold the ruling allowing the introduction of [the nurse's] testimony").

In this case, Defendant has not provided adequate grounds for the Court to depart from the controlling precedent on this issue. For one, the Government has dispelled nearly all of Defendant's suppositions regarding the circumstances of the SANE examination. Defendant maintains, for instance, that A.P. cannot be presumed to have been truthful with Ms. Oliver because "diagnosis and treatment of [A.P.]'s injuries . . . had already occurred" prior to the SANE exam. Dkt. No. 35 at 5. Defendant also claims that Ms. Oliver's report "suggests that a colposcope exam of A.P. had earlier been conducted at the hospital" along with a CTA. *Id.* at 4. Yet, the Government states that "[a] colposcope was not done, either by the SANE or the ER physicians, because there was no colposcope available in the ER." Dkt. No. 40 at 3. Furthermore, Defendant claims that Rule 803(4) should not apply "[b]ased on the lack of actual medical questions" during the SANE and because the report "does not indicate that Nurse Oliver prescribed or recommended any medications to A.P. for any alleged injuries." Dkt. No. 35 at 4-5. In response, the Government

9

explains that Ms. Oliver "conducted a head-to-toe assessment of injuries as well as a pelvic examination and the taking of urine and DNA samples." Dkt. No. 40 at 7. In a later supplement to its expert notice, the Government further qualifies Ms. Oliver as "an expert in the physiological consequences of strangulation" and notes that she performed a Strangulation Hypoxia Anoxia Symptom TBI Assessment ("SHASTA") on A.P. after A.P. disclosed strangulation during the SANE. Dkt. No. 41 at 1, 4. Finally, the Government notes that, contrary to Defendant's assertion, Ms. Oliver did in fact prescribe A.P. certain medications after the examinations, which included "antibiotics in case A.P. had been exposed to any sexually transmitted diseases." Dkt. No. 40 at 7; *see also* Dkt. No. 40-1 (listing additional medications given by Ms. Oliver).

Because the Government has adequately addressed Defendant's conjecture regarding the circumstances of the SANE examination, all that remains is Defendant's assertion that A.P.'s statements to Ms. Oliver would be cumulative if admitted in addition to her testimony. The Court finds, however, that this argument is likewise out of step with controlling precedent. *See White*, 502 U.S. at 355-56. Defendant's Motion is therefore DENIED as to this issue.

**B.     Ms. Gonzales and A.P.'s Statements During the CAFI**

Defendant objects to the proposed testimony of Ms. Gonzales in its entirety based on improper qualification and lack of relevance. Dkt. No. 35 at 5-6. Defendant also maintains that the statements made by A.P. during the CAFI constitute hearsay and would violate his rights under the Confrontation Clause if admitted. *Id.* at 6; Dkt. No. 38 at 4-6. However, the Government notes that it does not intend to play the interview during its case-in-chief nor elicit detailed testimony from Ms. Gonzales regarding A.P.'s statements. Dkt. No. 40 at 9. Thus, the Court need only address Defendant's objections as to qualification and relevance at this time.

Admissibility of expert witness testimony is evaluated under Federal Rule of Evidence 702, which permits a qualified expert witness to testify and render an opinion if the proponent demonstrates to the Court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. While district courts are generally afforded broad latitude in determining whether to admit expert testimony under Rule 702, objections to expert witnesses must be resolved according to the gatekeeping duties set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Taylor v. Cooper Tire & Rubber Co.*, 130 F.3d 1395, 1397 (10th Cir. 1997); *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003); *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1215 n.1 (10th Cir. 2011) ("If expert testimony is not reliable under *Daubert/Kumho*, it is not admissible under Rule 702."). At its core, *Daubert* is concerned with "ensur[ing] the reliability and relevancy of expert testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The goal of its gatekeeping requirement is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* The corresponding inquiry is two-pronged. "First, the Court determines whether the expert is qualified by knowledge, skill, experience, training or education to render the opinion." *Lippe v. Howard*, 287 F. Supp. 3d 1271, 1277-78 (W.D. Okla. 2018). Second, "the Court must . . . determine whether the expert's opinion is reliable and relevant under the principles set forth in *Daubert* and *Kumho Tire*, in that it will assist the trier of fact." *Id.* at 1278.

11

### 1.    Ms. Gonzales is Qualified to Testify as an Expert

Ms. Gonzales is expected to testify on the methods and procedures involved in performing CAFIs, the disclosure process for victims of sexual abuse, and grooming.  Dkt. No. 33-1 at 5-8. In conjunction with her testimony on these subjects, she "is expected to opine that her interview of A.P. was conducted according to best practices" as well as "discuss A.P.'s demeanor during the interview, whether her demeanor changed during key points of the interview, whether A.P. ever corrected [Ms. Gonzales] during the interview, and why that is significant." *Id.* at 8.

Defendant's sole objection to Ms. Gonzales' qualifications pertains to her proposed testimony on A.P.'s demeanor during the CAFI.  He asserts that "Ms. Gonzales' Curriculum Vitae [Dkt. No. 33-5] is void of any specialized education, training, or experience that would suggest that she possesses expertise on body language or human behavior to allow testimony as to the significance of any particular body language or demeanor of A.P. during the forensic interview." Dkt. No. 35 at 6.[1]  Nevertheless, in response to Defendant's objection, the Government states that

---

[1] Ms. Gonzales' CV indicates, among other things, that she has obtained a Master of Social Work with Children and Families from the University of Texas at Arlington, served in positions involving some form of child advocacy for at least a decade, conducted over 1,800 forensic interviews, and presented trainings both nationally and internationally on the subject of child abuse and forensic interviewing.  Dkt. No. 33-5 at 1.  Her list of training experience spans four pages and specifies instruction on subjects like "When a Child Recants Allegations of Sexual Abuse," "A Survivor's Perspective on Grooming and Prevention," and "Verbal De-escalation and Crisis Communication Skills." *Id.* at 2-5.

Defendant is not necessarily wrong that "Ms. Gonzalez' education appears to consist of degrees in social work, which is not human communication and behavior" per se, and "[h]er C.V. does not suggest that she had any specialized training, education, or experience in behavioral analysis" as a stand-alone subject.  Dkt. No. 35 at 6.  However, "a proposed expert 'should not be required to satisfy an overly narrow test of his own qualifications.'" *Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1092 (W.D. Okla. 2009) (quoting *Gardner v. General Motors Corp.,* 507 F.2d 525 (10th Cir.1974)).  Moreover, it is widely recognized that expert witnesses may acquire expertise on a subject through experience in the field and should be permitted to rely on that acquired expertise provided they "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis of the opinion, and how that experience is reliably applied to the facts." *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting

it does not intend offer Ms. Gonzales as an expert in body language or human behavior; rather, "Ms. Gonzales will merely report if there were times during A.P.'s forensic interview where her demeanor changed." Dkt. No. 40 at 11. That is, she would not be "offering an opinion" about body language and demeanor, "just reporting her observation" of A.P.'s general deportment throughout the interview. *Id.* The Court will hold the Government to its representation.

The Court is satisfied that Ms. Gonzales is both qualified as an expert in the stated fields and will not exceed the scope of her expertise if testifying in accordance with the summary of opinions contained in the Government's notice.

### 2.    Ms. Gonzales' Proposed Testimony is Relevant

Defendant does not contest the reliability of Ms. Gonzales' proposed testimony. Indeed, such would be difficult given Ms. Gonzales' considerable experience in performing CAFIs and the foundation of her testimony in the facts of this case. Instead, he argues that Ms. Gonzales' proposed testimony regarding the disclosure process in sexual abuses cases, victim responses to sexual abuse, and grooming would be irrelevant. Dkt. No. 35 at 6.

"The 'touchstone' of admissibility of expert testimony is its helpfulness to the trier of fact." *Wilson v. Muckala*, 303 F.3d 1207, 1219 (10th Cir. 2002). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (internal

---

Advisory Committee's Note to Fed. R. Evid. 702 (2000 amendment)). In this case, it would be reasonable to expect that Ms. Gonzales' education, training, and experience offer valuable insight not possessed by the ordinary juror on the behavior of children and adolescents during forensic interviews. *Cf. United States v. Charley*, 189 F.3d 1251, 1263-64 (10th Cir. 1999) (affirming admission of a pediatrician's general and conditional opinion that, "while his physical examination revealed nothing remarkably abnormal, a normal examination is not necessarily inconsistent with a history of sexual abuse," where, in addition to the expert's credentials in pediatrics, he had specific experience with child sexual abuse cases). "Experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from . . . specialized experience.'" *Kumho*, 526 U.S. at 148-49 (quoting Hand, *Historical and Practical Considerations Regarding Expert Testimony*, 15 Harv. L. Rev. 40, 54 (1901)).

quotation marks and citations omitted).  "In assessing whether testimony will assist the trier of fact, district courts consider several factors, including whether the testimony is within the juror's common knowledge and experience, and whether it will usurp the juror's role of evaluating a witness's credibility."  *United States v. Garcia*, 635 F.3d 472, 476-77 (10th Cir. 2011) (internal quotation marks omitted).

The Tenth Circuit has determined that qualified experts may testify in child sexual abuse cases regarding the characteristics of sexually abused children generally and the characteristics exhibited by alleged victims specifically.  *United States v. Parson*, 84 F.4th 930, 938 (10th Cir. 2023) ("This court has made clear that testimony regarding the characteristics of sexually abused children does not, invariably, amount to vouching for the credibility of an alleged victim.") (citing *Charley*, 189 F.3d at 1264-65).  In doing so, it has routinely rejected arguments that expert testimony on the reporting of sex crimes against minor victims and disclosure process are irrelevant.  *Id.* ("This is so because the average juror often lacks expertise on the characteristics of victims of child sex abuse, particularly in the process of disclosing such abuse.") (collecting cases); *United States v. Smith*, No. 23-7029, 2024 WL 3067174, at *5 (10th Cir. June 20, 2024) (citing with approval the holding in *Parson* that "it is simply wrong to argue that generalized expert testimony about a child's disclosure of sexual abuse is categorically inadmissible" (internal quotation marks omitted)); *United States v. Riggs*, No. 23-5062, 2024 WL 2873897, at *9 (10th Cir. June 7, 2024) (likewise rejecting an argument that the expert's "testimony did not help the jury because 'the general characteristics, trauma, mental health, and reporting methods of child victims of assault all touch on credibility—an issue that the jury can understand without expert testimony'").

Defendant's argument here is somewhat unique.  He maintains that because "the minor status of A.P. is not relevant to the charged offenses[,] . . . the proposed testimony of the disclosure

14

process, responses to sexual abuse[,] and grooming is also not relevant." Dkt. No. 35 at 6. However, the Court has already determined that A.P.'s age is relevant to provide context of the alleged crimes and to facilitate the jury's determination of A.P.'s credibility. Either way, the Tenth Circuit precedent on this issue is well established. Consistent with that precedent, the Court concludes Ms. Gonzales' testimony may be relevant and could assist the jury.[2] Defendant's Motion is therefore DENIED as to this issue. The Government is reminded, however, that proper foundation must be laid prior to eliciting expert testimony on any of the contested subjects, and Ms. Gonzales will not be permitted to testify as to A.P's credibility or her statements during the CAFI.

## V. Defendant's Supposed Altercation with a Third Party

Defendant anticipates that the Government will offer evidence concerning a physical altercation between Defendant and A.P.'s cousin, K.S., after the charged offenses on the morning of November 30, 2025. Dkt. No. 38 at 6-7. Defendant argues that evidence of such altercation should be excluded because its probative value would be substantially outweighed by the danger of unfair prejudice, wasting time, and confusing issues. *Id.* In response, the Government states that Defendant used a knife against K.S. during the altercation, which would "corroborate[] [A.P.]'s report of use of the knife and the accompanying force or threat of force during the rape." Dkt. No. 42 at 7. It further maintains that testimony regarding the altercation would not waste time, "as [K.S.] will already be testifying to other relevant facts, and his testimony on this issue will not be lengthy as the assault was of brief duration." *Id.*

Consistent with the Rule 403 standard above, the Court must weigh the probative value of evidence against unfair prejudice according to "its maximum reasonable probative force and its

---

[2] The Court will address the bounds, and the extent of the relevancy, of Ms. Gonzales' testimony in response to appropriate objections at trial.

minimum reasonable prejudicial value." *Murry*, 31 F.4th at 1291.  Doing so here, the Court finds that the probative value of testimony regarding Defendant's alleged altercation with K.S. would not be substantially outweighed by the prejudicial value threatened by the evidence.  The Government notes that the evidence will be used to corroborate Defendant's possession of a knife on the same day he is charged with assaulting A.P. using a knife, thereby "clarify[ing] the issues for the jury and enhance[ing] their ability to assess the credibility of [A.P.]'s testimony." Dkt. No. 42 at 7.  Meanwhile, Defendant has failed to clarify exactly how he believes the evidence will result in any prejudice.  Defendant is not indicted for assault against K.S., so a jury is unlikely to confuse any of the issues based solely on the pair's supposed altercation.  More importantly, there is practically nothing inherently inflammatory about a person possessing a knife and using it in self-defense.  In this context, perhaps there is some risk of unfair prejudice were the jury to find that Defendant's alleged use of the knife in self-defense was disproportionate to the threat posed by K.S., but even that minor risk of prejudice could be mitigated if one considers that Defendant is alleged to have been woken up by K.S. and repeatedly punched.  All told, the evidence regarding the altercation would seem to hold little risk of adversely affecting the jury's attitude toward Defendant in a manner that is wholly apart from its judgment as to the crimes charged, and Defendant's Motion is therefore DENIED as to this issue.  Nonetheless, out of an abundance of caution, the Government is directed to request a sidebar with the Court outside of the presence of the jury prior to offering evidence on the altercation.

## VI.    Evidence of Defendant's Prior Gang Affiliation

Defendant additionally seeks to exclude evidence of his supposed prior gang affiliation as irrelevant and unfairly prejudicial.  Dkt. No. 38 at 7.  A defendant's gang affiliation may or may not be unduly prejudicial depending on its relevance in context.  *See, e.g.*, *United States v. Brown*,

200 F.3d 700, 708-09 (10th Cir. 1999) (affirming admission of gang affiliation where involvement went to "the issues of identity, joint venture and existence of a conspiracy" and "illuminate[d] the relationship" between defendants and witnesses).  In its response to the Motion, the Government makes no mention whatsoever of Defendant's prior gang affiliation.  *See generally* Dkt. No. 42.  Because the Court cannot foresee any reason why Defendant's prior gang affiliation would be relevant in this case, Defendant's Motion is GRANTED as to this issue.  The Government may not elicit testimony from third parties or admit Mirandized statements by Defendant pertaining to his prior gang affiliation.  Still, to the extent that the Government believes Defendant's purported gang affiliation does bear some relevance to this matter, it must bring the matter to the Court's attention outside of the presence of the jury.

## VII.    Defendant's Prior Convictions

Finally, Defendant moves to exclude evidence "from third parties and through *Mirandized* statements given by Mr. Monroe that[,] prior to the alleged offense, Mr. Monroe had served time in prison, had been fairly recently released from serving his term of incarceration, and has prior convictions."  Dkt. No. 38 at 7-8.  "Such evidence," he argues, "would have no probative value and would be highly prejudicial."  *Id.*

Determining whether a witness may be impeached by evidence of prior felony convictions requires analysis according to the knotty framework set forth under Federal Rule of Evidence 609.  Analysis begins with two threshold matters.  First, no conviction is admissible if it "has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure."  Fed. R. Evid. 609(c).  Second, "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later," evidence of the prior conviction can only be admitted if "its probative value . . . substantially outweighs its prejudicial effect" and "the

17

proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." *Id.* 609(b).

The Government states that it "will seek to impeach [Defendant] with his prior convictions . . . for Assault and Battery with a Dangerous Weapon and . . . Conjoint Robbery." Dkt. No. 42 at 7. According to the Government, Defendant was still serving terms of incarceration for both convictions within the past ten years. *Id.* Hence, the Court need not evaluate either conviction according to the inverted 403 standard provided under Rule 609(b). The Motion does indicate, however, that Defendant discharged sentences for two other convictions "in Oklahoma County case[] CF-2010-5888 in 2011 and 2014." Dkt. No. 38 at 8. In the event Defendant testifies, he asks the Court to preclude impeachment based on those prior convictions. *Id.* The docket of that case reveals that the two felony convictions Defendant is referring to were for Assault and Battery Upon a Police or Other Law Officer. *See* Docket in *State of Oklahoma v. Monroe*, No. CF-2010-5888 (Okla. Cty., Okla. filed Sept. 1, 2010). In its response, the Government states that, "[u]nless [Defendant]'s testimony makes his conviction for Assault and Battery on a Police Officer relevant, [it] will not seek to impeach him with that prior conviction, because that term expired more than ten years ago." Dkt. No. 42 at 7. Considering that the Government does not intend to admit evidence of any convictions subject to Rule 609(b), the Court need not rule on Defendant's Motion as to this issue.[3]

If a prior conviction is not subject to either of the threshold inquiries under Rule 609, the question becomes whether the witness' conviction involved some dishonest act or false statement.

---

[3] The Court reminds the parties of Local Criminal Rule 47-4, which requires that every motion "must state on the first page whether or not it is opposed." LCrR 47-4. This rule requires the parties to confer before each motion is filed to determine whether the motion is necessary. Had Defendant had conferred with the Government prior to filing this Motion, he would have known that this issue was not necessary to raise.

A prior conviction *must* be admitted for the purpose of impeachment "if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Fed. R. Evid. 609(a)(2). Examples of criminal acts deemed to have involved dishonest acts or false statement within the meaning of Rule 609(a)(2) include "making false and misleading statements in the sale of securities," "making false claims to the United States government," and "issuing a bad check *while knowing it will be dishonored* is a crime of dishonesty or false statement." *United States v. Mejia-Alarcon*, 995 F.2d 982, 989 (10th Cir. 1993) (collecting cases). By comparison, "evidence that a witness was convicted for a crime of violence, such as murder, is not admissible under Rule 609(a)(2), even if the witness acted deceitfully in the course of committing the crime." Advisory Committee's Note to Fed. R. Evid. 609 (2006 amendments). "Of course, robbery, burglary[,] and theft are ordinarily considered to be dishonest, but the term as used in Rule 609(a)(2) is more restricted. . . . To come within Rule 609(a)(2) the convictions must have some bearing on the credibility of the witness." *United States v. Seamster*, 568 F.2d 188, 190-91 (10th Cir. 1978) (holding that the defendant's prior convictions for burglary were not automatically admissible under Rule 609(a)(2)). The convictions at issue here—Assault and Battery with a Dangerous Weapon and Conjoint Robbery— fall within this latter category and must therefore be analyzed under Rule 601(a)(1).

Separate standards are applied under Rule 609(a)(1) depending on whether the witness subject to impeachment is the defendant in a criminal case. In either case, prior felony convictions "must be admitted" if they pass muster under the applicable standard. Fed. R. Evid. 609(a)(1). Where the witness is a defendant in a criminal case, his prior convictions must be admitted for impeachment "if the probative value of the evidence outweighs its prejudicial effect to that defendant." *Id.* 609(a)(1)(B). Evaluation of this standard is performed according to a "special

19

balancing test" designed to shield defendant-witnesses from the "unique risk of prejudice" faced as the accused, namely, "the danger that convictions that would be excluded under Rule 404 will be misused by a jury as propensity evidence despite their introduction solely for impeachment purposes." *United States v. Smalls*, 752 F.3d 1227, 1240 (10th Cir. 2014) (quoting Advisory Committee's Note to Fed. R. Evid. 609 (1990 amendments)). The test weighs five factors:

> (1) the impeachment value of the defendant's prior crimes;
>
> (2) the dates of the convictions and the defendant's subsequent history;
>
> (3) the similarity between the past crime and charged crime;
>
> (4) the importance of the defendant's testimony; and
>
> (5) the centrality of the defendant's credibility at trial.

*Id.* If a prior conviction is deemed admissible from the balance of these factors, "[t]he well-settled rule in this circuit is that the permissible scope of cross-examination under Rule 609 extends to the essential facts of convictions, the nature of the crimes, and the punishment." *Id.* As such, it is important to note one more preliminary matter: Defendant appears to object only to the introduction of the "nature" of his prior felony convictions. Dkt. No. 38 at 8. One way to read this argument is that Defendant would concede to the Government's admission of his prior felony convictions generally but object to any admission of the "nature" those convictions. Were this doubtless his argument, Defendant's Motion could be denied as to this issue without further analysis. *See United States v. Wolf*, 561 F.2d 1376, 1381 (10th Cir. 1977) ("Ordinarily, it is improper for the prosecution to examine into the details of the crime for which the accused was convicted. The cross-examination should be confined to a showing of the essential facts of convictions, the nature of the crimes, and the punishment."); *Smalls*, 752 F.3d at 1240 ("Indeed, the failure to include the names and nature of prior offenses may prejudice the defendant because

the jury is left to speculate as to the essential facts of prior convictions."). Nevertheless, the Court will evaluate the convictions under the full balancing test.

### A.    Determination of Rule 609(a)(1)(B) Balancing Factors

#### 1. Impeachment Value

"In evaluating . . . the impeachment value of the defendant's prior crimes, a prior conviction is more likely to be admissible where it involves a crime that bears on defendant's credibility." *United States v. Ahaisse*, No. 2020-CR-106-CVE, 2021 WL 2290574, at *2 (N.D. Okla. June 4, 2021). The goal of measuring impeachment value is not synonymous with parsing prior convictions according to the *crimen falsi* standard under Rule 609(a)(2). Even if a defendant's prior convictions do not involve acts of dishonestly or false statements, per se, he still may be impeached according to Rule 609(a)(1) if the convictions bear upon his credibility as a witness in the case at bar. *See id.* (citing *United States v. Verner*, No. 15-CR-0039-CVE, 2015 WL 1528917, at *8 (N.D. Okla. Apr. 3, 2015), *aff'd*, 659 F. App'x 461 (10th Cir. 2016).

The Government's arguments as to this factor do little to persuade the Court of the impeachment value of Defendant's prior convictions. Dkt. No. 42 at 9 ("Robbery is crime that by its nature implies dishonesty as it is a theft by force or threat of force. The Assault and Battery with a Deadly Weapon is also probative as the conviction demonstrates that he is not law abiding and thus may be willing to lie under oath."). Were the Court to adopt the Government's reasoning, all crimes would have to be recognized as having some inherent impeachment value simply by virtue of being crimes. Such a finding would render consideration of this factor pointless and erode the utility of Rule 609. Because the Government has failed to identify how Defendant's prior convictions would themselves be meaningfully probative of his credibility, the Court finds that this factor weighs against their admission. *See United States v. Bagley*, 772 F.2d 482, 487

21

(9th Cir. 1985) ("The prosecution bears the burden of establishing that the probative value of admitting a prior conviction outweighs its prejudicial effect.")

### 2.    Temporal Proximity

The relative weight accorded to the temporal proximity between a defendant's prior conviction and the charged offense conduct is highly dependent on context. On the one hand, the probative value of a prior conviction is diminished where the conviction appears to be firmly within the defendant's rearview by the time of the alleged offense conduct, with respect to both the amount of time that has passed and the defendant's track record since. *E.g.*, *United States v. Begay*, 144 F.3d 1336, 1338 (10th Cir. 1998) (holding that the districting court did not abuse its discretion in admitting evidence of the defendant's prior convictions rape and burglary, which "were *nearly* ten years old at the time of trial" (emphasis added)). Alternatively, "if the witness has multiple convictions, the probative value of an older conviction arguably is not diminished by the passage of time since the witness has continued to engage in criminal conduct, suggesting his character has not improved." 28 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6134 (2d ed.). By the same token, closer proximity between the prior conviction and the charged offense will invariably militate in favor of higher probative value, if only for the fact that the defendant-witness has had less time to demonstrate reform.

Here, the Government has offered no context by which to aid the Court's assessment of temporal value. Instead, it merely reiterates that Defendant discharged his sentences sometime within the last ten years. Dkt. No. 42 at 9. That fact alone is of no use at this stage in the inquiry. Because Rule 609(b) dictates application of a unique standard for convictions older than ten years, any convictions assessed under Rule 609(a)(1) are, by implication, more recent. Without more, the analysis cannot be fruitful. Given the absence of specific information regarding the temporal

proximity of Defendant's two prior convictions, the Court is unable to ascertain whether this factor militates for or against admission of the two prior convictions.

### 3.       Similarity to Charged Crime

The more similar a defendant's prior convictions are to the crimes charged, the more likely it becomes that a jury will unjustly infer criminal propensity based on his convictions rather than use the evidence for valid impeachment purposes. *Ahaisse*, 2021 WL 2290574, at *2. Put simply, "past felonies are most prejudicial in cases where the felonies are most similar to the crimes charged." *United States v. Chaco*, 801 F. Supp. 2d 1217, 1228 (D.N.M. 2011) (citations omitted).

While the Government notes, in passing, that there are "similarities" between Defendant's prior conviction for Assault and Battery with a Dangerous Weapon and the charged offense conduct, it nevertheless concludes that there is "little risk" of prejudice in admitting evidence of either conviction. Dkt. No. 42 at 9. The Court is not fully convinced. Defendant is alleged to have sexually assaulted A.P. at knifepoint, so there is a rather significant risk that the jury might use Defendant's prior assault with a dangerous weapon as propensity evidence.   But the Government's assessment is not entirely without merit. It is at least true that the gravamen of the charged offense conduct in this case is not merely assault with a dangerous weapon but, rather, *sexual* assault with a dangerous weapon. *See Chaco*, 801 F. Supp. 2d at 1229 ("[The defendant]'s felony convictions are for robbery, breaking and entering, false imprisonment, and attempting to disarm peace officer. These felonies are not sex crimes, which reduces the possibility that the jury will assume they show a propensity to molest children than if [defendant]'s criminal history contained, for example, prior sexual assaults."). Moreover, the Court agrees that Defendant's robbery conviction is not similar enough to sexual assault as to threaten substantial prejudice by its admission alone. Thus, the Court finds that this factor cuts both ways: against admission of

Defendant's prior conviction for Assault and Battery with a Dangerous Weapon but in favor of admitting his prior conviction for Conjoint Robbery.

### 4.    Importance of Defendant's Testimony and Centrality of His Credibility

In the context of Rule 609(a)(1)(B), the importance of a defendant's testimony should be weighed alongside the relative need to impeach his credibility with evidence of prior convictions. The more likely it is that a jury's assessment of the defendant's credibility will be vital to adjudicating his guilt, the more pressing it becomes to admit evidence weighing upon his credibility. "Thus, where a case is reduced to a swearing contest between witnesses, the probative value of conviction evidence is increased." Wright & Miller, supra, § 6134. "Conversely, where the witness testifies as to inconsequential matters or facts that are conclusively shown by other credible evidence, . . . the probative value of impeachment evidence is diminished." *Id.*

Assessing a defendant's credibility is often crucial in cases of alleged sexual assault. This is particularly true where physical evidence showing that the assault took place or linking the defendant to the crime is lacking, thereby prompting the Government to rely heavily on witness testimony to prove its case. The Government maintains that Defendant's credibility is equally "central" here. Dkt. No. 42 at 9-10. Its argument is most compelling as to these factors:

> [Defendant] admitted to the police that he had sexual intercourse with [A.P.], but he characterized the sexual intercourse as consensual. If [he] testifies, he will likely deny that any crime occurred and thus his credibility will be of paramount importance to the jury. The jury must be able to fully assess [his] credibility if he tries to refute [A.P.]'s expected testimony regarding the sexual offenses.

*Id.* at 10. Tenth Circuit precedent is in accord. *E.g.*, *United States v. Smith*, 10 F.3d 724, 727 (10th Cir. 1993) (holding that the trial court did not abuse its discretion in admitting evidence of the defendant's prior convictions where it "determined that the probative value justified admission of this evidence, given [d]efendant's duress defense and the importance of his credibility," and gave a limiting instruction regarding permissible uses of the defendant's prior convictions). *See also*

*United States v. Albers*, 93 F.3d 1469, 1480 (10th Cir.1996) ("[T]he defendant was entitled to the protection of the rule that only the prior conviction, its general nature, and punishment of felony range were fair game for testing the defendant's credibility. The further damaging details the prosecutor spelled out were not."). While admission of Defendant's prior convictions no doubt carries some risk of unfair prejudice, these cases demonstrate that such risk is adequately mitigated by permitting the jury to hear only general evidence regarding the convictions. Hence, the two final factors weigh in favor of admitting Defendant's prior convictions.

## B.       Rule 609(a)(1)(B) Balancing

Having considered the relevant factors, the Court finds that evidence of Defendant's prior conviction for Assault and Battery with a Dangerous Weapon would be more prejudicial than probative and should therefore be excluded pursuant to Rule 601(a)(1)(B). If Defendant elects to take the stand, however, the Government may impeach his testimony by admitting evidence of his prior conviction for Conjoint Robbery. Only Defendant's prior assault conviction threatens a significant degree of undue prejudice.

Defendant's Motion is therefore GRANTED IN PART and DENIED IN PART as to this issue. Evidence of Defendant's prior conviction for Assault and Battery with a Dangerous Weapon will be excluded from trial. However, should Defendant take the stand during trial, the Government may impeach his testimony using evidence of his prior conviction for Conjoint Robbery, provided it only seeks to introduce general evidence of the conviction and avoids disclosure of any prejudicial details to the jury.

25

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion in Limine [Dkt. No. 38] is GRANTED IN PART and DENIED IN PART as set forth above.

IT IS FURTHER ORDERED that Defendant's Objection to the Government's Notice of Testimony Pursuant to Rule 16(a)(1)(G) [Dkt. No. 35] is OVERULLED.

Dated this 3rd day of April 2026.

_____

JOHN F. HEIL, III
CHIEF UNITED STATES DISTRICT JUDGE

26